**John Burgess, OSB No. 106498**
johnburgess@lawofficeofdanielsnyder.com
**Carl Post, OSB No. 061058**
carlpost@lawofficeofdanielsnyder.com
**LAW OFFICES OF DANIEL SNYDER**
1000 SW Broadway, Suite 2400
Portland, OR 97205
Telephone: (503) 241-3617
Facsimile: (503) 241-2249
Of Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **RICHARD STRATTON**, | Case No. 3:23-cv-1894-MO |
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT** (*Bivens* Action – Prison Medical; Rehabilitation Act of 1973; FTCA – negligence) |
| **ANDREW GRASLEY**; **NELSON AYALA-RUBIO;** and **THE UNITED STATES OF AMERICA,** | |
| Defendants. | **JURY TRIAL DEMANDED** |

## INTRODUCTION

1.      Plaintiff brings claims against Defendants Andrew Grasley and Nelson Ayala-Rubio, two doctors at FCI Sheridan, for providing medically unacceptable care to Plaintiff in violation of the Eighth Amendment to the U.S. Constitution.

2.      Plaintiff Richard Stratton, then an inmate at FCI Sheridan, suffered serious and permanent worsening of his medical condition (multiple myeloma) when Defendants Grasley and Ayala-Rubio denied him medical treatment for the entirety of his stay at Sheridan.

PAGE 1 – FIRST AMENDED COMPLAINT

Defendants Grasley and Ayala-Rubio were deliberately indifferent to plaintiff's serious medical condition. This caused the pathological worsening of his condition and extreme pain, and shortened his life expectancy.

3.     Plaintiff seeks compensatory damages, punitive damages, as well as attorney fees and costs as set forth below.

## JURISDICTION

4.     This court has jurisdiction over the subject matter of this Complaint under 28 U.S.C. § 1331.

## VENUE

5.     Venue is proper within the District of Oregon because all the events giving rise to this claim occurred in this judicial district, and all defendants reside in this judicial district. 28 U.S.C. § 1391(b). Specifically, all the acts and practices alleged herein occurred at FCI Sheridan in Yamhill County, Oregon.

## PARTIES

6.     Plaintiff Richard Stratton was at all times relevant an inmate in Federal Bureau of Prisons (BOP) custody at FCI Sheridan.

7.     Defendant Andrew Grasley is a BOP physician at FCI Sheridan. Defendant Grasley was responsible for providing medical care to Plaintiff while he was incarcerated at FCI Sheridan.

8.     Defendant Nelson Ayala-Rubio was a BOP physician at FCI Sheridan. Defendant Ayala-Rubio was responsible for providing medical care to Plaintiff while he was incarcerated at FCI Sheridan.

9.     Defendant The United States of America operates the Bureau of Prisons, including FCI Sheridan, and employs or employed each of the named defendants.

10. Defendants Grasley and Ayala-Rubio acted under the color of law and were deliberately indifferent to Plaintiff's constitutional rights. Defendants acted in bad faith and violated clearly established laws which reasonable prison officials knew or should have known. Plaintiff sues Defendants Grasley and Ayala-Rubio in their individual capacities.

**FACTS**

11. At the time of Plaintiff's conviction, plaintiff resided in Montana. After sentencing, Plaintiff went to FCI Sheridan for approximately 10 months of incarceration.

12. Prior to his incarceration, plaintiff's medical providers diagnosed him with multiple myeloma (MM), a rare plasma cell cancer that is treatable but not considered curable. The average life expectancy of a person suffering from MM is six years. Early diagnosis and consistent treatment correlate with the best results; conversely delays or gaps in diagnosis and treatment are correlated with pathological worsening of the condition and worse outcomes, shorter life expectancy. MM can cause, among other symptoms, bone pain and weakness, leading to fractures, lesions, and tumors.

13. Prior to his incarceration, plaintiff began a course of chemotherapy treatment for MM. He used crutches because he had tumors in both hips and his tailbone, which caused pain and difficulty walking. Plaintiff also had a fractured fibula and pelvis. Regardless, BOP took his crutches away and forced him to walk without any accommodations.

14. Moreover, plaintiff suffered excruciating pain for the entire 10 months he was incarcerated at FCI Sheridan. He did not receive medication to treat his pain despite repeatedly requesting pain medication.

15. In March 2022, Dr. Catherine O'Brien at Oregon Oncology Specialist saw plaintiff. She recommended continuing cancer treatment and pain management with gabapentin and morphine. BOP medical staff did not give Plaintiff either drug and they did not provide him

PAGE 3 – FIRST AMENDED COMPLAINT

with any cancer treatment for the entire duration of his incarceration.

16.     It is beyond debate that not treating MM is not a medically accepted course of treatment and no reasonable physician would believe that failing to provide treatment was reasonable.

17.     This delay in his treatment caused plaintiff excruciating and unrelenting pain, which defendants Grasley and Ayala-Rubio did not treat. The delay in treatment also set back the overall prospects of treating his condition; a delay or gap in treatment can pathologically worsen the condition and shorten a person's life.

18.     There was no medical or penological justification for denying Plaintiff medical treatment for cancer or for denying his pain medication. This treatment or lack thereof was medically unacceptable.

19.     On August 24, 2022, plaintiff was in protective custody when officers performed a raid. Officer Brent Pacard was a correctional officer at FCI Sheridan involved in the raid, along with six correctional officers at FCI Sheridan.

20.     Pacard handcuffed Plaintiff behind his back despite the fact that his physician had issued a front cuff pass because of the danger of breaking bones (caused by MM). Plaintiff was following directives from Pacard, and pursuant to these commands, he backed out of his cell. As noted above, plaintiff has difficulty ambulating because of weakness in his bones caused by cancer. When he did so he lost his footing. In response, defendant Pacard slammed plaintiff's head against a concrete wall three times and then threw him face down on the ground. The six unknown officers jumped on top of him and kneed him in neck, back, and ribs. Plaintiff was injured in this violent and unprovoked assault. Plaintiff believes his ribs were fractured but he did not receive any imaging to confirm.

21.     Also, during the assault, one or more of the officers grabbed plaintiff's genitals

PAGE 4 – FIRST AMENDED COMPLAINT

multiple times.

22.    Plaintiff was traumatized and injured by the assault and did not receive medical treatment for his injuries.

23.    Plaintiff provided BOP with a timely Tort Claims Notice. BOP acknowledged receipt of this tort claim notice on December 20, 2023. More than six months has passed since that acknowledgement.

## COUNT I

### (Eight Amendment – *Bivens* – Unacceptable Medical Care)

### (Against Defendants Grasley and Ayala-Rubio)

24.    Plaintiff re-alleges all previous relevant paragraphs as if fully stated herein.

25.    Defendants Grasley and Ayala-Rubio were deliberately indifferent to Plaintiff's serious medical needs as follows:

(a)    In failing to provide any medical treatment for Plaintiff's MM; and

(b)    In failing to adequately treat or acknowledge Plaintiff's pain.

26.    As a result of their deliberate indifference, Defendants Grasley and Ayala-Rubio violated Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment of the United States Constitution. In failing to provide medically acceptable and necessary treatment, as set forth above, Plaintiff suffered physical harm in the form of pathological worsening of his MM, pain, and a shortening of his life expectancy. Failing to provide any medical care for Plaintiff's MM, was medically unacceptable under the circumstances, and Defendants Grasley and Ayala-Rubio chose this course of treatment in conscious disregard of the excessive risk to the Plaintiff's health. Defendants Grasley and Ayala-Rubio knew or should have known that failing to provide medical care to Plaintiff for his MM promptly would result in his suffering physical harm and severe physical and mental pain and

suffering.

27.     As a result of the Grasley and Ayala-Rubio's violations of Plaintiff's Constitutional rights, Plaintiff suffered physical harm and severe physical and mental pain and suffering. Accordingly, Plaintiff is entitled to economic and non-economic damages against Grasley and Ayala-Rubio in an amount to be determined at trial and for Plaintiff's costs and expenses.

## COUNT II

## Rehabilitation Act of 1973, Section 504 (29 U.S.C. § 701 *et seq*.)

## (Against Defendant United States)

28.     Plaintiff re-alleges all previous relevant paragraphs as if fully stated herein.

29.     Section 504 states "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . ." 29 U.S.C. § 794(a).

30.     Plaintiff is a qualified individual with a disability or handicap under the Rehabilitation Act because he is substantially limited in major life activities including, but not limited to, walking.

31.     Plaintiff was otherwise qualified to receive the benefit of the services made available to inmates of FCI Sheridan.

32.     At all times material, BOP was and is a federal agency.

33.     Defendant's actions and omissions as described above violated Plaintiff's rights under the Rehabilitation Act by excluding him or denying him the benefits of Defendant's services solely because of his disability.

PAGE 6 – FIRST AMENDED COMPLAINT

34.    Defendant's conduct showed deliberate indifference to Plaintiff's rights because Defendant knew that Plaintiff requested accommodations/aids, disregarded his requests without trying to determine if it was possible to accommodate his request, and failed to provide an adequate accommodations in lieu of crutches.

35.    Plaintiff and Members of the Class sustained emotional distress and damages due to Defendant's violation of the Rehabilitation Act.

36.    Pursuant to Section 505 of the Rehabilitation Act, Plaintiff is entitled to compensation for his damages and an award of attorney fees and costs.

## COUNT III

### (FTCA – Negligence)

### (Against Defendant United States)

37.    Plaintiff re-alleges all previous relevant paragraphs as if fully stated herein.

38.    Defendants Grasley and Ayala-Rubio were plaintiff's medical practitioners who acted within the court and scope of their employment with defendant United States.

39.    Defendants' treatment of Plaintiff fell below the applicable standard of care and was negligent as follows:

> (a)    In failing to provide any medical treatment for Plaintiff's MM; and

> (b)    In failing to adequately treat or acknowledge Plaintiff's pain.

40.    Defendants Grasley and Ayala-Rubio's treatment of Plaintiff fell below the applicable standard of care and was negligent, as alleged above. BOP's treatment of Plaintiff fell below the applicable standard of care and was negligent as regards (a)-(l), above.

41.    Defendants knew or should have known that Plaintiff's condition (MM) required treatment both for the underlying cancer and for the extreme pain it caused. In failing to provide treatment for MM or his pain, Plaintiff suffered physical harm and pain. Defendants knew or

PAGE 7 – FIRST AMENDED COMPLAINT

should have known that failing to promptly provide adequate care to Plaintiff would result in his suffering physical harm, including severe physical and mental pain and suffering.

42.    Defendants failed to use reasonable care in providing medical care to Plaintiff, as alleged above. Defendants' conduct was negligent.

43.    Defendants owe Plaintiff a higher standard of care because of the nature of incarceration. As a ward of BOP, Defendants manage all aspects of Plaintiff's health care, and decide when a request for a medical appointment should be granted. Had Plaintiff been a free person, he would have sought the appropriate treatment immediately and had some form of treatment rendered. However, as an incarcerated person, when Plaintiff sought treatment while in BOP's facility, his pleas for treatment were unmet. BOP voluntarily took the custody of Plaintiff under circumstances such as to deprive Plaintiff of normal opportunities for protection and created a non-delegable duty to ensure that Plaintiff was able to access adequate medical care while incarcerated. Defendants did not meet its obligation to provide healthcare that complies with appropriate professional standards.

44.    Defendants' conduct was unreasonable considering the risk of harm to Plaintiff. Defendants controlled all aspects of Plaintiff's medical care. Plaintiff's MM could have been easily treated as could his pain. If it had been treated, his medical prospects would be better and his life expectancy longer. Instead, Defendants unreasonably disregarded Plaintiff's requests for medical assistance concerning his MM and ignored a very dangerous medical issue.

45.    As a direct and proximate result of Defendants' negligence, Plaintiff suffered physical harm and severe physical and mental pain and suffering. Because of Defendants failure to treat his MM, Plaintiff suffered permanent harm. He will require future treatment because of Defendants' conduct.

46.    Defendants' conduct was a substantial factor in causing harm to Plaintiff.

PAGE 8 – FIRST AMENDED COMPLAINT

47.     As a result of Defendants' conduct, Plaintiff suffered economic and non-economic damages in an amount to be proved at trial.

48.     Plaintiff is entitled to a prevailing party fee, his costs and his disbursements.

## COUNT IV

### (FTCA – Assault/Battery)

### (Against Defendant United States)

49.     Plaintiff re-alleges all previous relevant paragraphs as if fully stated herein.

50.     Pacard and the six unknown officers were acting within the course and scope of their employment at the time of the raid.

51.     Defendant United States of America, by and through its employees (Pacard and the six unknown officers) acting within the course and scope of their employment, intended and attempted to cause harmful or offensive touching with Plaintiff and succeeded in those attempts.

52.     These constituted harmful and offensive contact with Plaintiff.

53.     As a result of the battery described above, Plaintiff has suffered physical injuries and pain as alleged above.

54.      As a result of Defendants' conduct, Plaintiff suffered compensatory damages in an amount to be proved at trial.

55.     Plaintiff is entitled to a prevailing party fee, his costs and his disbursements.

## PRAYER

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment granting him:

a)      An award of compensatory damages in a sum that is just as determined by a jury, here alleged to be $5,000,000;

b)      An award of punitive damages in a sum that is just as determined by a jury, he alleged to be $1,000,000 (against defendants Grasley and Ayala-Rubio arising out of Claim I);

PAGE 9 – FIRST AMENDED COMPLAINT

c)      Plaintiff's costs and expenses;

d)      Plaintiff's attorney fees in this suit (against defendant United States arising out of Claim II); and

e)      Any additional relief this court deems just, proper, and equitable.

**Plaintiff requests a trial by jury on all matters so triable.**

DATED: July 5, 2024

**Law Offices of Daniel Snyder**

 /s/ John Burgess
John Burgess, OSB No. 106498
johnburgess@lawofficeofdanielsnyder.com
Tel: (503) 241-3617 / Fax: (503) 241-2249
Of Attorneys for Plaintiff

PAGE 10 – FIRST AMENDED COMPLAINT